UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

TREVOR L. YOUNG, JR.,

        Plaintiff,

        v.                                        Case No. 22-C-130

RODGINA JONES, et al.,

        Defendants.

___

**DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

___

        Plaintiff Trevor L. Young, Jr., who is representing himself, is proceeding on a Fourteenth Amendment claim that Defendants used excessive force by unnecessarily deploying two taser shots while he was handcuffed inside his cell at the Milwaukee County Jail on January 8, 2022. Dkt. No. 1. On August 31, 2023, Defendants filed a motion for summary judgment. Dkt. No. 71. Because there are genuine disputes of material fact that are not captured by videotape evidence, the Court will deny the motion for summary judgment.

### BACKGROUND

        At the relevant time, Plaintiff was a pretrial detainee at the Milwaukee County Jail, where Defendant Rodgina Jones was a Lieutenant and Defendant Jacob Martin was a correctional officer. Dkt. No. 72, ¶¶2-5. Videotape evidence captures events occurring outside of Plaintiff's cell immediately before and after the incident giving rise to this lawsuit; but there is no videotape evidence of the events occurring inside Plaintiff's cell. Dkt. No. 77-4. The parties dispute what the videotape evidence shows as well as what occurred inside Plaintiff's cell. *See* Dkt. Nos. 72 & 83.

According to Defendants, on January 8, 2022, Plaintiff covered his cell window and flooded his cell. Dkt. No. 72, ¶¶6-7 & 15-16. At around 1:47 p.m., Lt. Jones, CO Martin, and CO Marisol Rodriguez (not a defendant) removed Plaintiff from his cell so that it could be cleaned. *Id*., ¶¶17-20. The correctional officers used a "RIPP belt" to escort Plaintiff out of his cell. *Id*., ¶19. According to videotape evidence, a RIPP belt appears to be metal handcuffs attached to the front of an inmate's waist using a thick black band that goes around the entire waist. *See* Dkt. No. 77-4 at 2:14 to 2:33. Around that same time, about 1:40 p.m., Psychological Services Worker (PSW) Lisa Regner had also notified correctional staff that Plaintiff had been placed on "suicide watch," so Lt. Jones informed Plaintiff of his placement on suicide watch as she removed him from his cell. *Id*. at 0:05 to 0:28; *see also* Dkt. No. 72, ¶20.

About 15 minutes later, at around 2:04 p.m., Plaintiff returned to his cell; his RIPP belt was removed; and he was given a yellow suicide gown. Dkt. No. 72, ¶¶22-24. Defendants explain that all inmates placed on suicide watch are required to wear a suicide gown to reduce the risk of self-harm. *Id*., ¶21. Plaintiff refused to change into his suicide gown and argued with staff about his placement on suicide watch. *Id*., ¶¶24-26. Lt. Jones and CO Martin gave Plaintiff multiple orders to change into the suicide gown and they warned him that they were authorized to use force, including a taser, if he did not obey orders. *Id*., ¶¶10, 25-27. Defendants explain that correctional staff are significantly outnumbered by inmates at the jail, so it is extremely important that inmates obey orders in a timely manner to run a safe and efficient institution. *Id*., ¶¶8-9. Plaintiff continued to disobey orders and became verbally combative inside his cell for five to six minutes. *Id*., ¶¶28-29.

At around 2:09 p.m., Plaintiff was given one final order to change into his suicide gown. *Id*., ¶29. At that point, Defendants claim that Plaintiff stood up and took a "boxer's stance," which

2

is a posture that many inmates take before lodging an attack. *Id.*, ¶31. Lt. Jones perceived an imminent threat of bodily injury to correctional staff, so she ordered CO Martin to deploy his taser. *Id.*, ¶32. CO Martin gave Plaintiff one final warning, and when Plaintiff still did not comply, CO Martin deployed his taser. *Id.*, ¶33. CO Martin's first taser shot was ineffective because one of the prongs did not engage. *Id.* CO Martin then immediately took a second shot, which was successful. *Id.*, ¶34. At around 2:10 p.m., CO Hannah Alexander (not a defendant) responded to a radio call (a "Code X") for the taser deployment. *Id.*, ¶35. According to CO Alexander, she found Plaintiff face down on his bed with his arms underneath him, so she handcuffed Plaintiff behind his back using her own handcuffs and escorted him from his cell at around 2:11 p.m. Dkt. No. 86, ¶¶11-16. After Plaintiff was medically cleared, he returned to his cell and still refused orders to change into a suicide gown. Dkt. No. 72, ¶39. At that point, staff decided to place Plaintiff in a restraint chair because he refused to change into a suicide gown. *Id.*, ¶40.

According to Plaintiff, he admits that he covered his cell door to get staff attention regarding a dispute about food, but he maintains that he did not purposely flood his cell (he had instead been saving water cups for a forthcoming blood draw that spilled); he did not disobey orders; he did not argue with staff; and he did not become verbally combative—he was only asking to speak to a PSW about his placement on suicide watch.[1] Dkt. No. 83, ¶¶15-16, 24-28. Plaintiff states that Defendants gave unnecessary "ultimatums and threats," including Lt. Jones repeatedly threatening to "beat your ass myself," if he didn't immediately change over. *Id.*, ¶26; *see also* Pl. Depo., Dkt. No. 77-1 at 74:19-20 & 75:11-12. Plaintiff also states that Lt. Jones entered his cell, tossed out the RIPP belt, went back into his cell to handcuff him behind his back (using ordinary

---

[1] The Court notes that Plaintiff did not submit a Declaration in support of his response to Defendants' Proposed Findings of Fact. However, Plaintiff's sworn complaint, along with his sworn deposition testimony, are consistent with the facts asserted to dispute Defendants' Proposed Findings of Fact. *See* Dkt. Nos. 1. & 77-1.

handcuffs), then ordered CO Martin to tase him. Dkt. No. 83, ¶¶29 & 31. Plaintiff states that he was not in a boxer's stance at the time he was tased because he was handcuffed behind his back. *Id*., ¶31. Plaintiff states that CO Martin did not give any warnings before tasing him and CO Alexander did not handcuff him because he was already handcuffed by Lt. Jones. *Id*., ¶¶33 & 36. Plaintiff also claims that he "chose to be placed in the restraint chair." *Id*., ¶39.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

A correctional officer's use of force is excessive under the Fourteenth Amendment where it "amounts to punishment," is not "rationally related to a legitimate nonpunitive governmental

4

purpose," or "appear[s] excessive in relation to that purpose" when viewed objectively. *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015); *Miranda v. County of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018). To survive summary judgment on a Fourteenth Amendment excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable" in light of the need for the use of force, the amount of force used, the extent of Plaintiff's injury, any effort made by the officer to temper or to limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether Plaintiff was actively resisting. *Kingsley*, 576 U.S. at 396-97.

Both parties have outlined in detail various inconsistencies in the others' story between the complaint, answer, discovery responses, and summary judgment materials. These inconsistencies speak to the parties' credibility, which the Court cannot weigh or resolve at summary judgment. The relevant question is whether Plaintiff was already handcuffed behind his back inside his cell at the time he was tased two times and whether it is reasonable to tase an inmate after five to six minutes of refusing to change into a suicide gown. If Plaintiff was already handcuffed behind his back when he was tased two times, as he claims, a reasonable jury could conclude that Defendants were not reasonable in perceiving a threat of harm (either to themselves or to Plaintiff based on his prior threats of self-harm) and therefore their use of a taser for refusing to wear a suicide gown was an objectively unreasonable use of force.

The Court has reviewed videotape evidence and simply cannot tell what happened inside Plaintiff's cell and whether he was handcuffed at the time he was tased two times. It is true that, consistent with Defendants' version of events, videotape evidence clearly shows Lt. Jones with Plaintiff's RIPP belt in her hands in front of his cell at around 2:05 p.m. Dkt. No. 77-4 at 7:58 to 9:05. Consistent with Plaintiff's version of events, videotape evidence also clearly shows Lt.

5

Case 1:22-cv-00130-WCG   Filed 04/11/24   Page 5 of 6   Document 93

Jones entering and exiting his cell several different times during that time frame. *Id*. at 8:21 to 8:45 and 9:06 to 9:15. It's unclear what she did inside the cell. It is possible she might have handcuffed him at some point. But it is also possible she simply talked to him. Defendants claim that videotape evidence clearly shows CO Alexander running towards Plaintiff's cell at 2:10 p.m. with handcuffs attached to her duty belt then leaving at 2:11 p.m. without handcuffs attached to her duty belt (because she allegedly used her own handcuffs on Plaintiff). But the officers' duty belts are difficult to see due to the color of their uniforms. *Id*. at 5:32 to 6:12. CO Alexander appears to be reaching for something on her right side as she runs into Plaintiff's cell, but it is unclear what she is reaching for. *Id*. at 5:38. The video does not clearly show handcuffs on her duty belt as she is running to the cell. *Id*. at 5:33 to 5:39. Further, as CO Alexander and Lt. Jones leave the cell with Plaintiff, both appear to have shiny objects on different parts of their duty belts but again it's unclear whether they are handcuffs, a key loop, a belt loop, buttons, or a badge. *Id*. at 6:10. Given that videotape evidence does not capture the incident, and the parties tell different stories about what happened (each with their own inconsistencies), the Court must deny summary judgment.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 71) is **DENIED**. The Clerk is directed to set this matter on the Court's calendar for a telephone conference to address further scheduling.

Dated at Green Bay, Wisconsin this 10th day of April, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge